## Case No. 12,410.

### SAWYER et al. v. TURPIN et al.

[2 Lowell, 29; [1] 5 N. B. R. 339.]

District Court, D. Massachusetts. Aug. 18, 1871.[2]

BANKRUPTCY—TRADER—INSOLVENCY—CONDITIONAL DELIVERY—FOUR MONTHS' LIMIT.

1. A trader is insolvent within the meaning of the thirty-fifth section of the present bankrupt act [of 1867 (14 Stat. 517)] when he is unable to pay his debts as they mature in the ordinary course of his business, and not merely when his liabilities exceed his assets.

[Cited in Strain v. Gourdin, Case No. 13,521.]

2. A contract for the conditional delivery of goods to a debtor gives his creditors no title to them until the account for the same is paid.

[Cited in brief in Cook v. Whipple, 55 N. Y. 156.]

3. Where a security by way of mortgage is given more than four months before bankruptcy, a change in the former substance of the deeds made within four months of the bankruptcy, will be protected if no greater value were put into the creditor's hands at that time than he had before.

4. A mortgage given when a debtor was insolvent and when his creditor had reasonable cause to believe him to be so, is void if made within four months of the filing of a petition in bankruptcy, hence money received from the sale of the mortgaged premises must be accounted for to the assignee.

[Cited in Avery v. Hackley, 20 Wall. (87 U. S.) 407.]

[5. Cited in National Security Bank v. Price. 22 Fed. 699, to the point that a person is presumed to intend the necessary consequences of his own acts, and any act whereby he gives his creditor a preference must be presumed to have been made with an intent to prefer.]

Two bills in equity by the assignee in bankruptcy of J. C. Bacheller, of Lynn, against Novelli & Co., of Manchester, England, and their agent in this country, E. Turpin, alleging that at certain times mentioned, and all within four months before the bankruptcy, Bacheller, being insolvent, made two mortgages of certain lands in Lynn, and a third mortgage of a house standing on leasehold land, and certain transfers of goods of the alleged value of twenty thousand dollars in gold, then in the bonded warehouses of the United States of Boston, to said Turpin as agent for Novelli & Co., with intent to prefer said last named defendants, they and their agent believing and

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

[2] [Affirmed in Case No. 12,409. Decree of circuit court affirmed by supreme court in 91 U. S. 114.]

having reasonable cause to believe that Bacheller was insolvent and intended a fraud on the act. The answers admitted that the mortgages were made as security for a large balance of account for goods sold, but denied all belief and reason to believe the insolvency of Bacheller, and averred that two of the mortgages were given instead of two earlier conveyances of the same property which had been made more than four months before the bankruptcy, and which were cancelled when these now in controversy were given. As to the goods, the answers admitted that transfers were made by Bacheller to Turpin as agent of his principals on the books of the custom house, and set out the several dates thereof, and averred that the goods were on their way from Novelli & Co. to Bacheller when the sales were lawfully rescinded before the property had ever vested in Bacheller, and if the re-transfers were not valid, there was a right to stop the same goods in transitu, and that said goods had not been delivered to Bacheller at the time of his stopping payment. The evidence tended to show that Novelli & Co. had for some years before July, eighteen hundred and sixty-eight, dealt largely with a firm of which Bacheller was a member, and when he began business by himself in eighteen hundred and sixty-eight he continued to send them large orders for goods such as he had always dealt in. The terms appear to have been that each invoice was to be remitted for within sixty days from its date. Early in eighteen hundred and sixty-nine Bacheller was largely in arrears to Novelli & Co., and continued to be so until his failure. He stopped payment in September and filed his petition on the twenty-second of October, eighteen hundred and sixty-nine, the defendants appearing by his schedule to be creditors to the amount of about forty-one thousand dollars, and held the securities mentioned in the bills. All his other debts were about six thousand dollars.

It appeared that in April, eighteen hundred and sixty-nine, Novelli & Co. wrote to Turpin expressing their dissatisfaction with the state of Bacheller's account, and directing him on receipt of the letter to proceed at once to Boston and if there was still an overdue balance, "to induce, request or insist that he hands over to you as collateral security the notes and such other documents of value you can by any means obtain, to be held by you in safe keeping until such time as he can cover our overdue balance by remittance." They afterwards in the same letter say that they consider "the position of J. C. B.'s affairs are not, in a commercial point of view, satisfactory," and state their reasons. On receipt of this letter Turpin went to Lynn and saw Bacheller, and obtained from him conveyances of the land on Bacheller street and of the shop on Exchange street, and a transfer of certain goods in the custom house as collateral security. And at the same interview it was agreed that all goods that should arrive thereafter should be warehoused in Turpin's name until they were sold by Bacheller, when Turpin should send withdrawal orders and Bacheller should sell the goods and remit the proceeds. This course of business was followed from that time, excepting that the remittances were made on account without special reference to any particular sales. Goods were so transferred to Turpin in May, June, August and September as they arrived, and were re-transferred by him as they were sold. When Bacheller stopped payment in September there were —— cases thus stored in Turpin's name, for a part of which he had sent on withdrawal orders which, on the failure, were sent back to him, and on the fourteenth of October he took the goods out of bond, paying the duties and charges, and caused them to be sold. At the time of his failure the bankrupt's debt to Novelli & Co. was as large as it was in May. On the twenty-seventh of July Bacheller handed to Turpin the mortgage of the house on Atlantic street as additional security. On the 31st of July Turpin brought the deeds which he had received in May to Mr. Bacheller's clerk, who was to have them recorded, and the clerk said that it would be better to make some change in their form and accordingly made out the mortgages which bear date thirty-first of July and were recorded in September. The delay for a month or more in recording the deeds was an oversight on the part of the clerk. The title to the Bacheller street property proved to be defective and the defendants realized nothing from that mortgage, so that the discussion was eventually confined to one mortgage of lands and one of personal property.

J. G. Abbott and B. Dean, for plaintiffs.

1. Bacheller was insolvent in May and ever after according to the accepted definition; for he could not pay his debts as they matured. Thompson v. Thompson, 4 Cush. 127; Lee v. Kilburn, 3 Gray, 594, and cases cited.

2. The defendants had notice of the insolvency, because their own debt was overdue, and they were unable to obtain payment. All the correspondence shows this to be so, and besides, they were obliged to take security on real estate for a balance which should have been liquidated as fast as it accrued.

3. The defence that the new mortgages were given in exchange for the old fails, because one was given for the first time July twenty-seven; another was for a bill of sale which was void, never having been recorded and no possession taken under it, and none of them were ever acted on.

4. All transfers of merchandise made within four months of October twenty-second are void, because they were given to secure an antecedent debt, when the debtor was insolvent and known to be so. The arrange-

ment cannot be dated back to May, because a mere executory contract for security does not suffice. This has been repeatedly decided by the supreme court of Massachusetts. Forbes v. Howe, 102 Mass. 427; Blodgett v. Hildreth, 11 Cush. 311; Paine v. Waite, 11 Gray, 190; Simpson v. Carleton, 1 Allen, 109; Denny v. Dana, 2 Cush. 160.

5. The right of stoppage cannot be set up, because the defendants asserted a wholly different and inconsistent title, under a new arrangement, by which the goods were to be held as security generally.

J. D. Ball, for defendants.

1. The weight of the evidence is that the defendants had no reasonable cause to believe the debtor to be insolvent until he actually stopped payment in September.

2. All but one of the mortgages was a mere change of security, which is valid. Stevens v. Blanchard, 3 Cush. 169.

3. All the goods now in controversy, excepting one case, were transferred on their arrival simultaneously with the receipt by Bacheller of the bills of lading and invoices from Turpin, and therefore they were conveyances of property which, but for this arrangement, the defendants would have withheld. It is like the instantaneous seizure which takes place when one mortgages back land to secure the payment of the purchase money, which, if done as part of the same transaction, gives the wife of the vendee no right of dower. At all events we had a right to stop the goods in the bonded warehouses in September, for the transit was not ended. Northey v. Field, 2 Esp. 613; Burnham v. Winsor [Case No. 2,180]; Donath v. Broomhead, 7 Barr. [Pa. St.] 301; Mottram v. Heyer, 5 Denio, 629; Harris v. Pratt, 17 N. Y. 249; Winks v. Hassall, 9 Barn. & C. 372; Kent, Comm. 547. The fact that Bacheller had transferred the goods to Turpin did not affect the right of stoppage in transitu as an independent right. Naylor v. Dennie, 8 Pick. 198; Scholfield v. Bell. 14 Mass. 40; Grout v. Hill, 4 Gray, 367; Feise v. Wray, 3 East, 94.

LOWELL, District Judge. The thirty-fifth section of the bankrupt act [of 1867 (14 Stat. 517)], so far as it relates to preferences, has not, as yet, been construed by the supreme court of the United States, but its meaning is as well established as it can be until it has passed that final ordeal, because the lower courts have been remarkably harmonious in their decisions upon it. A trader is insolvent within the meaning of that section when he is unable to pay his debts as they mature in the ordinary course of his business and not merely when his liabilities exceed his assets. The Massachusetts decisions under the law of that state have approved themselves to the judgment of the courts that have had occasion to pass upon this part of the United States statute, which is borrowed from that of Mas-

sachusetts, and is presumed to have been enacted with a full knowledge of its accepted judicial interpretation. It is equally well settled that when a trader is insolvent and knows it and expects or fears that he may at some future time be obliged to stop payment, and at such a time gives security to one creditor, he must be presumed to intend to prefer that creditor, because this is the necessary result of his conduct, if what he expects or fears may happen to come to pass. And it does not relieve the act of this intent to prove that other motives may have co-operated to induce the act such as the pressure of importunity or threats, or proceedings at law on behalf of the creditor so benefited. And if the creditor believed, or had reason to believe, in the insolvency of the debtor and that the security would be likely to make a preference, the case is complete, if bankruptcy in fact occurs within four months. This state of law was assumed in the argument on both sides in this case, and the facts were discussed in view of it. Upon careful consideration I find it impossible to doubt that Bacheller was insolvent in the technical sense on the sixth of May. The correspondence and other evidence which the defendants have furnished with the utmost frankness show that they had reason to doubt his ability to pay with punctuality, and that they did doubt it, though they may have had full hopes of ultimate payment. They were aware that he was constantly in arrears to them and that his excuses were unsatisfactory, and they feared he was over-trading, and speculating, which the event shows was probably true. Under these circumstances security is taken at the risk that bankruptcy may intervene within four months.

As Bacheller did not petition until the twenty-second of October, it is plain that the assignment of May sixth cannot be impeached. And the defendants insist that all the transfers of goods in bond and all but one of the mortgages were made in pursuance of that arrangement and date from that time. The plaintiffs contend on the other hand that a mere executory contract to give security is of no avail unless the transaction is completed more than four months before the bankruptcy, and that each deed or assignment dates from the time it was made and not from the time it was agreed to be made. To the cases cited for this doctrine may be added Arnold v. Maynard [Case No. 561], and Bank of Leavenworth v. Hunt [11 Wall. (78 U. S.) 391]. Whatever may be the proper limitations of this rule under the bankrupt act, the rule itself does not apply to the several assignments of goods in bond, because the agreement of May sixth was not so much an undertaking to give security upon property to be thereafter acquired, but as a new contract, by which the deliveries of goods by seller to purchaser were to be conditional, so that Bacheller never acquired the title to these lastings excepting under the terms of the new arrangement, and his creditors had

no interest in them unless there should be a surplus after paying the balance due the defendants. If this is the fair construction of that agreement, it can only be impeached by evidence that the goods were already so far vested in Bacheller that there was no consideration for the promise excepting the old debt, and such I understand to be the agreement for the plaintiffs. But the proofs are that the course of dealing even before May sixth, was to send the invoices and bills of lading to Mr. Turpin, and I see no reason to doubt that if this new arrangement had not been made he would have had the right to withhold the lastings not yet delivered, until his account should be paid. It follows that a contract for their conditional delivery gives no just cause of complaint to Bacheller's creditors.

So if security by way of mortgage was given in May, a change in the form or even in the substance of the deeds made within four months of the bankruptcy would be protected, if no greater value were put into the creditor's hands at that time than he had before. This is admitted; but it is urged that the bill of sale of the house given in May was void and could not form a legal equivalent for the mortgage of July. The facts on this part of the case are not entirely clear, because the original bill of sale cannot now be found. It appears to have been drawn up by the bankrupt's clerk, and his impression, as well as Mr. Turpin's, is that it was not in form a mortgage. Still, it was given and received as a valid security between the parties, and I am not prepared to say that it is shown to be void. The change of securities was considered to be a mere change of immaterial matters of form, without the least intent to vary the rights of the parties or of creditors, and I am of opinion that I cannot, in the present state of the evidence, undertake to say that the surrender of the bill of sale was not a sufficient consideration even as against creditors for the mortgage on the same property. Since the decision in Bank of Leavenworth v. Hunt, above cited, I cannot but feel some doubt whether the supreme court would recognize the validity of an unrecorded mortgage of chattels; but my own opinion has been recorded in its favor and that case does not necessarily overrule it. But the mortgage of the house and land on Atlantic street stands differently. It was given for the first time July twenty-seventh, and was not in exchange for anything, and the debtor was then embarrassed and was known by the defendants to be so. I do not recapitulate the evidence. It would seem that Bacheller must have had debts besides those contracted in his regular business, and it may be that the payment of some of those debts is still more objectionable in the view of the bankrupt law than any dealings with Novelli & Co. But with this I have no concern at present. That he was insolvent in the technical sense in July, and that the defendants had reason to believe him so I am constrained to hold upon the evi-

dence exhibited in the records. The result is that the money realized from the mortgage of the land on Atlantic street must be accounted for to the assignees. The proceeds of sales of the goods and of the shop belong to the defendants. Let decrees be entered accordingly.

[NOTE. Complainants appealed to the circuit court, where the above decree was affirmed. Case No. 12,409. They then appealed to the supreme court, which affirmed the decree of the circuit court. 91 U. S. 114.]

SAWYER (UNITED STATES v.). See Case No. 16,227.